UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

WINDY LUCIUS,

      Plaintiff,

v.

THE HAMPTON SOCIAL ORLANDO, LLC
d/b/a The Hampton Social restaurant
and PARKER RESTAURANT GROUP LLC,

      Defendants.

_____/

## **COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Windy Lucius ("Plaintiff") hereby sues Defendant The Hampton Social Orlando, LLC doing business as The Hampton Social restaurant and Defendant Parker Restaurant Group LLC doing business as https://www.thehamptonsocial.com for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq.*

1.     Venue lies in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.04, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been

given original jurisdiction over actions which arise from Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3.      Plaintiff is a Florida resident, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA 42 U.S.C. §12102(1) & (2), the regulations implementing the ADA as set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4.      Plaintiff uses the internet and a mobile device to help her navigate a world of goods, products and services like sighted individuals. The internet, websites and mobile applications provide her a window into the world that she would not otherwise have. She brings this action against Defendants for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5.      Plaintiff is also an advocate of the rights of similarly situated disabled

persons and is a "tester" for the purpose of asserting her civil rights. As such, she monitors mobile websites to ensure and determine whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6.     The Hampton Social restaurant which is located in Orlando is within this district and is open to the public and as such is defined as "a restaurant, bar, or other establishment serving food or drink" pursuant to 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2). There are five "The Hampton Social" restaurants operating in Illinois, one operating in Tennessee, and two operating in Florida. There are two planned restaurants to be located in Delray, Florida[1] and Miami, Florida[2]. The two currently operating "The Hampton Social" restaurants operating in Florida are located at 9114 Strada Place, Naples, Florida 34108[3] (which is not the subject of this instant action) and at 9101 International Drive, Orlando Florida 32819 (which is the subject of this instant action). The Hampton Social restaurant which is the subject of this instant action is referenced throughout as "Hampton Social Orlando (restaurant)," "restaurant," and "place of public accommodation."

7.     Defendant The Hampton Social Orlando, LLC (also referenced as "Defendant Social" or collectively with Defendant Parker Restaurant Group LLC as

---

[1] The Delray restaurant is owned by Hampton Social Delray LLC
[2] The Miami restaurant is owned by Hampton Social Miami LLC, which is not the subject of this instant action
[3] which is owned by The Hampton Social Naples, LLC and which is not the subject of this instant action

"Defendants") is a foreign limited liability company authorized to transact business in Florida and is the owner/operator of the Hampton Social Orlando restaurant. As the owner of a restaurant which is open to the public, Defendant Social is a "Public Accommodation" subject to Title III of the ADA because Defendant Social is a private entity which owns and/or operates a restaurant as defined in 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

8.     Defendant Parker Restaurant Group LLC is a Florida limited liability company which is privately held company based in Chicago. Defendant Parker Restaurant Group LLC is also referenced as "Defendant Parker Group" or collectively with Defendant Social as "Defendants."

9.     On information and belief, Defendant Parker Group is the owner, operator, and/or beneficiary of the https://www.thehamptonsocial.com mobile website[4]. On information and belief, subsequent to the effective date of the ADA, Defendant Parker Group constructed, or caused to be constructed, the https://www.thehamptonsocial.com mobile website (hereinafter "mobile website") for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to The Hampton Social chain of restaurants and specifically the Hampton Social Orlando restaurant. The mobile website delineates the goods,

---

[4] As referenced on the landing page

services, accommodations, privileges, benefits and facilities available to patrons at each of The Hampton Social restaurant physical locations, and specifically the Hampton Social Orlando restaurant.

10.     The mobile website is offered as a way for the public to become familiar with the Hampton Social Orlando menu selections, information on hours of operation, restaurant location, provides a link to reserve a table for dining within the Hampton Social Orlando location, permits the public to sign up for "The Hampton Social" customer rewards program and provides other information Defendants seek to communicate to the public. The mobile website also enables the public to purchase gift cards for exclusive use in The Hampton Social restaurants (and specifically the Hampton Social Orlando) and to check the balance on purchased gift cards. The mobile website also permits the public to order prepared meals online and have those meals ready for pick up at Hampton Social restaurant physical locations (specifically the Hampton Social Orlando restaurant location) and offers the public the ability to inquire about booking private dining events. By the provision of menu selection, reservation services, to-go/pick-up order selection, and the ability to purchase The Hampton Social gift cards online, the mobile website is an integral part of the goods and services offered by Defendants on behalf of each Hampton Social restaurant location and specifically the Hampton Social Orlando restaurant. By this nexus, the mobile website is characterized as a service of a Place of Public Accommodation

subject to Title III of the ADA[5], 42 U.S.C. §§ 12181(7)(B) & (E) and 28 C.F.R. §§ 36.104(2) & (5).

11.     Pursuant to 42 U.S.C. §§12181(7)(B) & (E) and 28 C.F.R. §§ 36.104(2) & (5), Defendant Parker Group is defined as a Public Accommodation within meaning of Title III because it is the owner and/or operator of the https://www.thehamptonsocial.com mobile website.

12.     The https://www.thehamptonsocial.com mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device. Defendants have subjected themselves to the ADA because the mobile website is offered as a tool to promote, advertise and sell products and services from each of The Hampton Social restaurant locations and specifically Defendant Social's Hampton Social Orlando restaurant location. As a result, the mobile website must interact the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of

---

[5] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

the goods and services afforded to the general public.[6]

13.     The mobile website does not properly interact with VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

14.     Like the seeing community, Plaintiff would like the opportunity to be able to use the mobile website to comprehend Hampton Social Orlando menu selections and to test for the ability to make reservations, order food online for pickup, inquire about booking private dining events online, sign up for the customer rewards program and to purchase "The Hampton Social" gift cards online. However, unless Defendants are required to eliminate the access barriers at issue and required to change their policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the mobile website and will be deterred from fully using that mobile website.

15.     Plaintiff is continuously aware of the violations on the mobile website and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations exist unless she is willing to suffer additional discrimination.

---

[6] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

16.     Defendants are fully aware of the need to provide full access to all visitors to the mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

17.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is her only means to secure adequate redress from Defendants' discriminatory practices.

18.     Notice to Defendants is not required as a result of Defendants' failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

19.     Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

20.     The ADA requires that Public Accommodations (and Places of Public Accommodation) ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

21.     According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and

services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

22.    28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

23.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

24.    The https://www.thehamptonsocial.com mobile website has been designed to integrate with The Hampton Social restaurants (and specifically the Hampton Social Orlando restaurant) through the provision of a reservation service, the ability to inquire about booking private dining events online, the ability to order prepared food for online for pick-up and the provision of a store from which to

purchase gift cards for use within The Hampton Social restaurants; therefore, the mobile website is an extension of each The Hampton Social restaurant (and specifically the Hampton Social Orlando restaurant), each of which is a Place of Public Accommodation. By and through the mobile website, the Hampton Social Orlando restaurant has been extended into individual persons' homes and portable devices wherever located. As such, the mobile website is integrated with, and is a nexus to, the Hampton Social Orlando restaurant. Therefore, the mobile website is governed by the following provisions:

a.     U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

b.     42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

c.     42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be

discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

      d.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

      e.    42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

      f.    42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity

to participate in such programs or activities that are not separate or different."

g.     42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h.     42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

25.     Plaintiff attempted to access and test the mobile website, but was unable to do so. Plaintiff continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with mobile VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG

2.1 Level A and AA Guidelines):

i.   Guideline 1.1.1 Non-Text Content is violated. The *social media* icons in the main menu are not labeled, each is announced as "space."

ii.  Guideline 1.3.1 Info and Relationships is violated.  Multiple unlabeled icons are present in the *Reservation* form, this impedes navigation and comprehension for mobile VoiceOver screen reader software users. For example, the *clock* icon is announced as "t" and the chevrons are each announced as "m."

iii. Guideline 2.4.1 Bypass Blocks is violated. The *Skip to Content* button is announced, but it does not engage. When a mobile VoiceOver screen reader software user double taps the *Skip to Content* button, it disappears and does not take the mobile VoiceOver screen reader software user to the main content as the button instructs. Mobile VoiceOver screen reader software users still have to swipe down to access the main content whether the *Skip to Content* button pushed or not.

iv.  Guideline 2.4.3 Focus order is violated. The site is required to provide focus in a logical order and this has been violated. Mobile VoiceOver screen reader software users are not able to access the Locations, Reservations, or the Private Events submenu items. When any of these submenu items are opened, all of the submenu items receive focus at once, but no announcement is made, and mobile VoiceOver screen reader software users cannot swipe to hear the submenu items.

v.   Guideline 2.4.6 Headings and Labels is violated. The *help toggle* buttons are not announced to mobile VoiceOver screen reader software users. The *close button* label is not clear, it is announced as "close underscore vip underscore v2 underscore drawer button."

vi.  Guideline 3.3.1 Error Identification is violated. If a user submits a purchase order for a gift card with an error within the first section of the *gift card* form, an error message is displayed in red text at the top of the *gift card* form and the *Amount* field turns red, but for mobile VoiceOver screen reader software users, focus moves directly to the *To* field (the second section of the form) and the *To* field is announced without alerting the  mobile VoiceOver screen reader software user as to an error in the first section of the *gift card* form.

vii.    Guideline 3.3.2 Labels or Instructions is violated. Elements must be labeled and given instructions, and the mobile website fails to do so. For example, the location field in the *$250 promotional* popup is not labeled. It is announced as "combo box list box pop up collapsed."

viii.    Guideline 4.1.2 Name, Role, Value is violated. All elements must be built for accessibility and this is not the case. Mobile VoiceOver screen reader software users cannot select a new date in the *reservation* form. When the *reservation* popup is opened, focus moves to the underlying page instead of to the date selection.

26.    As the owner, operator, and/or beneficiary of the mobile website which exclusively serves as a gateway to the Hampton Social Orlando restaurant, Defendants are required to comply with the ADA and the provisions cited above. This includes Defendants' obligation to create and maintain a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile website and the content therein, including the ability to make a reservation to dine within the Hampton Social Orlando restaurant and to purchase prepared food for pick up from that restaurant and to purchase gift cards online.

27.    In this instant case, the https://www.thehamptonsocial.com mobile website reservation platform is linked to a third party vendor. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third party vendor's reservation platform does not absolve Defendants of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements

include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves). Compliance with the ADA is a nondelegable duty.

28. With respect to its mobile website, Defendants have violated the ADA by failing to interface the mobile website with VoiceOver screen reader software utilized by visually impaired individuals (as delineated within paragraph 25) either directly or through contractual, licensing or other arrangements. Defendants' violations have resulted in denying Plaintiff accommodation on the basis of her disability:

a. by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

b. in the denial of providing Plaintiff the opportunity to participate

in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

      c.    in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

      d.    by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

      e.    by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

      f.    notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

      g.    by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such

goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

> h.      by a failure to take such steps as may be necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. §12182(b)(2)(iii)).

29.      Plaintiff is continuously aware of the violations within the https://www.thehamptonsocial.com mobile website and is aware that it would be a futile gesture to attempt to utilize and/or test the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

30.      Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because she is disabled.  As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within the

https://www.thehamptonsocial.com mobile website. By continuing to operate the mobile website with discriminatory conditions, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within the mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendants deprive Plaintiff the equality of opportunity offered to the general public.

31.    Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendants' discrimination until Defendants are compelled to comply with the requirements of the ADA and conform its mobile website to WCAG 2.1 Level A and AA Guidelines.

32.    Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendants' non-compliance with the ADA with respect to the https://www.thehamptonsocial.com mobile website. Plaintiff has reasonable grounds to believe that she will continue to be subjected to discrimination in violation of the ADA by Defendants when she visits the mobile website to test for

compliance with the ADA. Plaintiff desires to access the mobile website to assure herself that the mobile website is in compliance with the ADA so that she and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

33.     Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief as requested herein.

34.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendants to alter the https://www.thehamptonsocial.com mobile website to make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff Windy Lucius hereby demands judgment against Defendant The Hampton Social Orlando, LLC and Defendant Parker Restaurant Group LLC and requests the following injunctive and declaratory relief:

a.     The Court issue a Declaratory Judgment that determines that the https://www.thehamptonsocial.com mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;

b.     The Court issue a Declaratory Judgment that Defendants have violated

the ADA by failing to monitor and maintain the mobile website to ensure that it is readily accessible to and usable by persons with vision impairment;

c.      The Court issue an Order directing Defendants to alter the mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d.      The Court issue an Order directing Defendants provide the appropriate auxiliary aids such that individuals with visual impairments will be able to communicate with the https://www.thehamptonsocial.com mobile website in order to comprehend menu selections, ordering/paying for to-go/pick-up of food purchases, ordering/paying for The Hampton Social gift cards online and for making reservations to dine within The Hampton Social restaurants (specifically the Hampton Social Orlando restaurant location), and for signing up for The Hampton Social customer rewards club, and during that time period prior to the mobile website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendants to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public

through the mobile website.

e.     The Court enter an Order directing Defendants to evaluate and neutralize their policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

f.     The Court enter an Order directing Defendants to continually update and maintain the mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.     The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h.     The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Dated: July 25, 2022

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone:  305-351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*